UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TRUSTEES of the LOCAL 138, 138A & 138B
INTERNATIONAL UNION OF OPERATING
ENGINEERS WELFARE FUND, ANNUITY FUND,
LEGAL FUND, VACATION FUND,
APPRENTICESHIP TRAINING FUND and
TRUSTEES of the CENTRAL PENSION FUND OF
THE INTERNATIONAL UNION OF OPERATING
ENGINEERS,

                      Plaintiffs,

       -against-

**REPORT & RECOMMENDATION**
CV 16-1066 (ADS)(AYS)

EARLY BIRD SWEEPING CONTRACTORS, INC.,

                      Defendants,
----------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Plaintiffs are trustees of several employee welfare, benefit and pension funds (the "Funds"), who commenced this action for violations of Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). Named as Defendant is Early Bird Sweeping Contractors, Inc. ("Defendant" or "Early Bird"), a New York corporation that is authorized to conduct business within the State of New York, with a principal place of business at 79 South Coleman Road, Centereach, New York 11720. (Compl. ¶ 4.)

      Presently before this Court, upon referral from the Honorable Arthur D. Spatt for report and recommendation, is Plaintiffs' second motion for a default judgment, seeking to compel an

1

audit of Defendant's books and payroll records.  For the reasons set forth below, it is respectfully recommended that the motion be granted in its entirety.

## FACTUAL BACKGROUND

Plaintiffs are trustees of the Funds, which are maintained pursuant to Agreements and Declarations of Trust (the "Trust Agreements") to collect and receive contributions and provide benefits to eligible participants and their beneficiaries.  (Trust Agreement, DE [25-2]; Compl. ¶ 6.)  At all relevant times, Defendant has been a party to or otherwise bound by a collective bargaining agreement (the "CBA") with the International Union of Operating Engineers, Local 138, 138A, 138B, and 138C (the "Union"), which requires Defendant to contribute to the Funds on behalf of workers covered by such agreements.  (Duffy Decl., DE [25-2], ¶ 3; Compl. ¶ 10.)  The Funds are third-party beneficiaries of the CBA.  (Compl. ¶ 7.)

Pursuant to the Trust Agreement, Defendant is required to permit and cooperate in audits of its books and payroll records and to furnish to the Funds such information, books, records and reports as are required to ensure compliance with the terms of the Trust Agreement, as well as ascertain the amount of fringe benefit contributions due to the Funds.  (Duffy Decl. ¶ 5; Compl. ¶ 15.)  On November 9, 2015, the Funds' independent auditor requested that Defendant submit to an audit for the period July 1, 2013 to June 30, 2015.  (Duffy Decl. ¶ 6; Compl. ¶ 16.)  Defendant refused to comply with the Funds' auditor's request.  (Duffy Decl. ¶ 6; Compl. ¶ 17.)  By letters dated November 18, 2015 and December 23, 2015, the Funds' counsel again requested that Defendant submit to an audit for the foregoing time period.  (Duffy Decl. ¶ 6; Compl. ¶ 18.)  To date, Defendant has refused to comply with Funds' audit requests.  (Duffy Decl. ¶ 6; Compl. ¶ 19.)

PROCEDURAL HISTORY

Plaintiffs commenced this action on March 3, 2016 via the filing of a Summons and Complaint. (Docket Entry ("DE") [1].) The Summons and Complaint were served upon Defendant on April 20, 2016 at the residence of Brian Bird ("Bird"), Defendant's owner, by service upon Michael "Doe," a fifteen-year old family member Bird. (DE [6].) On November 7, 2016, Plaintiff requested a certificate of default, (DE [9]), and the Clerk of the Court certified Defendant's default on November 8, 2016. (DE [10].)

Plaintiffs' first motion for default judgment was filed on November 30, 2016 and referred to the undersigned on December 1, 2016. (DE [11], [12].) By Report and Recommendation dated March 30, 2017, this Court respectfully recommended that Plaintiffs' motion for default judgment be denied for improper service of the Summons and Complaint. (DE [14] at 7.) The Court further recommended that Plaintiffs be afforded sixty (60) days from the date the District Court ruled on the Report and Recommendation to effectuate proper service. (DE [14] at 8.) No objections to the Report and Recommendation were filed and, on April 8, 2017, Judge Spatt adopted the Report and Recommendation. (DE [15].)

Plaintiff then re-served the Summons and Complaint upon Defendant on June 7, 2017, via service on the New York Secretary of State, (DE [17]), and by mail addressed to Defendant at its principal place of business. (DE [16]). Defendant failed to answer the Complaint or otherwise appear in this action. On December 11, 2017, Plaintiff again requested a certificate of default, (DE [20]), and, on December 21, 2017, the Clerk of the Court entered a notation of default against Defendant. (DE [21].)

On August 17, 2018, Plaintiffs filed the within second motion for default judgment, seeking to compel an audit of Defendant's books and records and for an award of attorney's fees

3

and costs in the amount of $6,610.50.  (DE [25].)  On August 20, 2018, Judge Spatt referred Plaintiffs' motion to the undersigned for a Report and Recommendation as to whether the motion should be granted and, if so, what damages, if any, should be awarded.  (DE [27].)

## DISCUSSION

I.     Legal Standard

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process.  See Fed. R. Civ. P. 55; Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d. Cir. 2011).  Initially, the moving party must obtain a certificate of default from the Clerk of the Court.  See Fed. R. Civ. P. 55(a).  Once the certificate of default is issued, the moving party may apply for entry of a default judgment.  See id.

Where a default occurs, the well-pleaded factual allegations set forth in the Complaint are deemed to be true.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see also Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").  However, "[i]t is well established that a party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound discretion of the court."  Allstate Ins. Co. v. Howell, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).  In determining whether to grant a default judgment, the court has the "responsibility to ensure that the factual allegations,

4

accepted as true, provide a proper basis for liability and relief." Ferrara v. Tire Shop Ctr., No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015). Accordingly, the district court must determine whether a plaintiff's allegations establish liability as a matter of law. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law.") (internal quotation omitted).

II.  Liability

Having now properly served Defendant with the Summons and Complaint in this action, the Court's first task is to determine whether the factual allegations set forth in the Complaint establish Defendant's liability as a matter of law. Pursuant to Section 515 of ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; see also LaBarbera v. J.D. Collyer Equip. Corp., 337 F.3d 132, 134 (2d Cir. 2003). In addition, Section 301 of the LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees . . . ." 29 U.S.C. § 185(a). Here, the terms of the CBA and the Trust Agreement mandate that Defendant contribute to the Funds on behalf of employees covered by the CBA at specified hourly rates, as well as submit remittance reports to the Funds. (Compl. ¶¶ 11-14; Duffy Decl. ¶ 5.) The CBA and the Trust Agreement also require Defendant to submit to audits of its books and payroll records at any time. (Compl. ¶ 15; Duffy Decl. ¶ 5.) Plaintiffs allege in the Complaint that Defendant has consistently refused to submit to an audit for the time period July 1, 2013 to June 30, 2015, despite Plaintiffs' demands that it do so. (Compl. ¶¶ 16-19.) Based on these allegations, as well

5

as the Declaration of the Funds' Administrator, William K. Duffy, which substantiates these allegations, the Court concludes that there is a basis for liability for violations of ERISA and the LMRA based on Defendant's breach of the CBA and the Trust Agreement. Accordingly, the Court respectfully recommends that Plaintiff's motion for default judgment be granted and that Defendant be compelled to submit to an audit.

III. Attorney's Fees

Plaintiffs do not request any damages under ERISA; rather, they seek only the attorney's fees and costs incurred in bringing this action.

A. Attorney's Fees

As a general matter when determining attorney's fees, the "starting point" for calculating a "presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'") (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court has held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A., 559 U.S. 542, 551 (2010) (emphasis in original). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" Id. at 553 (citation omitted); see also Arbor Hill, 522 F.3d at 190-91 (holding that a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a

6

"reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

The reasonableness of hourly rates is guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits." Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney who worked on the action. See Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." Perdue, 559 U.S. at 552.

Here, Plaintiff seeks to recover $5,550.50 in attorney's fees and has submitted the Declaration of Michel Bauman, dated August 17, 2018, and contemporaneous billing records in support of their application. (Bauman Decl., (DE [25-1].) Plaintiffs seek reimbursement for services rendered by attorneys Jane Lauer Barker, Lauren Bonaguro, Vipin Varghese, and Michael Bauman, as well as paralegal Alexandra Boriello, at hourly rates of $400, $225, $225, $375-$400, and $160, respectively. (Bauman Decl. ¶¶ 21-30 and Ex. B, annexed thereto.) The time spent on this action by counsel totals nineteen hours. (Bauman Decl. ¶ 31.)

Plaintiffs' submission adequately sets forth the background and experience of each of the attorneys and the paralegal who billed time on this action. Moreover, as stated above, Plaintiffs' application is supported by contemporaneous time records that detail the tasks the attorneys and the paralegal performed in connection with this action, as well as the time expended on each task. (Bauman Decl., Ex. C.) Having reviewed the documents submitted, this Court finds both the number of hours expended and the hourly rates to be reasonable. See Gagasoules v. MBF Leasing LLC, No. 08-CV-2409, 2013 WL 1760134, at *4 (E.D.N.Y. Apr. 24, 2013) ("In the Eastern District of New York, depending on the nature of the action, extent of legal services provided and experience of the attorney, hourly rates range from approximately $300 to $400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates.") (collecting cases). Accordingly, the Court respectfully recommends that Plaintiffs be awarded $5,550.50 in attorney's fees.

B.  Costs and Disbursements

Plaintiff also seeks a total of $1,060.00 in costs and disbursements in connection with the instant action. (Bauman Decl. ¶ 34.) These costs are comprised of: (1) $375.00 for electronic legal research; and, (2) $685.00 for "litigation support," which Plaintiffs' counsel explains in his declaration include the court filing fee and process server fees. (Id.) The Court notes that the billing records also contain disbursements in the amount of $5.85 for photocopies, (Bauman Decl., Ex. C); however, Plaintiffs' motion does not contain a request for reimbursement of such charges.

Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). However, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the

8

costs requested." Ganci v. U.S. Limousine Serv. Ltd., No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting Pennacchio v. Powers, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)). The costs for which Plaintiffs seek to recover are those ordinarily associated with litigation and this Court finds them to be reasonable. Accordingly, the Court respectfully recommends that Plaintiffs' be awarded $1,060.00 in costs and disbursements.

## RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion for default judgment, appearing at Docket Entry [25] herein, be granted, and that Defendant be ordered to submit to an audit of its books and payroll records for the period July 1, 2013 to June 30, 2015. It is further recommended that Plaintiffs be awarded attorney's fees in the amount of $5,550.50 and costs and disbursements in the amount of $1,060.00, for a total monetary award of $6,610.50.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Plaintiffs. Further, the Court is directing Plaintiffs to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant at its last known address(es) and to file proof of service on ECF. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court of Court of Appeals. Thomas v. Arn, 474 U.S. 140,

145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal.");

Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED.**

Dated:  Central Islip, New York
          December 19, 2018

                                       /s/ Anne Y. Shields
                                       ANNE Y. SHIELDS
                                       United States Magistrate Judge